ORIGINAL

DAVID SHONKA
Acting General Counsel
HEATHER ALLEN
DUANE C. POZZA (CA Bar No. 225933)
JANE RICCI
ROBIN THURSTON
hallen@ftc.gov, dpozza@ftc.gov
jricci@ftc.gov, rthurston@ftc.gov
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Tel: (202) 326-3224
Fax: (202) 326-3629

FILED
CLERK, U.S. DISTRICT COURT
DEC - 5 2013
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

Local Counsel
FAYE CHEN BARNOUW (CA Bar No. 168631)
fbarnouw@ftc.gov
Federal Trade Commission
10877 Wilshire Blvd., Ste. 700
Los Angeles, CA 90024
Tel: (310) 824-4343
Fax: (310) 824-4380

Attorneys for the Plaintiff
Federal Trade Commission

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>TATTO, INC., a corporation, also d/b/a WINBIGBIDLOW and TATTO MEDIA;<br><br>BULLROARER, INC., a corporation, also d/b/a BULLROARER CORPORATION PTY LTD; | Case No. CV13-8912 DSF (FFMx)<br><br>**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF** |

LODGED
CLERK, U.S. DISTRICT COURT
DEC - 4 2013
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

ORIGINAL

DAVID SHONKA
Acting General Counsel
HEATHER ALLEN
DUANE C. POZZA (CA Bar No. 225933)
JANE RICCI
ROBIN THURSTON
hallen@ftc.gov, dpozza@ftc.gov
jricci@ftc.gov, rthurston@ftc.gov
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Tel: (202) 326-3224
Fax: (202) 326-3629

Local Counsel
FAYE CHEN BARNOUW (CA Bar No. 168631)
fbarnouw@ftc.gov
Federal Trade Commission
10877 Wilshire Blvd., Ste. 700
Los Angeles, CA 90024
Tel: (310) 824-4343
Fax: (310) 824-4380

Attorneys for the Plaintiff
Federal Trade Commission

FILED
CLERK, U.S. DISTRICT COURT
DEC - 5 2013
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

no fee due

IFS 21

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>TATTO, INC., a corporation, also d/b/a WINBIGBIDLOW and TATTO MEDIA;<br><br>BULLROARER, INC., a corporation, also d/b/a BULLROARER CORPORATION PTY LTD; | Case No. CV13-8912 DSF (FFMx)<br><br>**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF** |

LODGED
CLERK, U.S. DISTRICT COURT
DEC - 4 2013
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

SHABOOM MEDIA, LLC, a limited liability company, also d/b/a TATTO MEDIA;

BUNE, LLC, a limited liability company;

MOBILE MEDIA PRODUCTS, LLC, a limited liability company;

CHAIRMAN VENTURES, LLC, a limited liability company;

GALACTIC MEDIA, LLC, a limited liability company;

VIRTUS MEDIA, LLC, a limited liability company;

LIN MIAO, in his individual and corporate capacity; and

ANDREW BACHMAN, in his individual and corporate capacity;

Defendants.

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1. The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). As explained herein, Defendants have been engaging in a widespread scheme to place unauthorized third-party charges on consumers' mobile phone bills, a harmful and illegal practice known as "cramming."

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b).

3. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), (c)(1) and (2), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFF

4. The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

5. The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b) and 56(a)(2)(A).

## DEFENDANTS

6. Defendant Tatto, Inc. ("Tatto") is a Delaware corporation with its principal place of business in Los Angeles, California. Tatto transacts or has transacted business in this District and throughout the United States.

7. Defendant Bullroarer, Inc. ("Bullroarer") is a Delaware corporation with its principal place of business located in San Francisco, California. Bullroarer transacts or has transacted business in this District and throughout the United States.

8. Defendant Shaboom Media, LLC ("Shaboom") is a Delaware limited liability company with its principal place of business located in Boston, Massachusetts. Shaboom transacts or has transacted business in this District and throughout the United States.

9. Defendant Bune LLC ("Bune") is a Delaware limited liability company with its principal place of business located in Boston, Massachusetts. Bune transacts or has transacted business in this District and throughout the United States.

10. Defendant Mobile Media Products, LLC ("Mobile Media") is a Delaware limited liability company with its principal place of business located in Beverly Hills, California. Mobile Media transacts or has transacted business in this District and throughout the United States.

11. Defendant Chairman Ventures, LLC ("Chairman Ventures") has been a Delaware limited liability company with its principal place of business located in Boston, Massachusetts. Chairman Ventures transacts or has transacted business in this District and throughout the United States.

12. Defendant Galactic Media, LLC ("Galactic Media") has been a Delaware limited liability company with its principal place of business located in Boston, Massachusetts. Galactic Media transacts or has transacted business in this District and throughout the United States.

13. Defendant Virtus Media, LLC ("Virtus Media") has been a Delaware limited liability company with its principal place of business located in Boston, Massachusetts. Virtus Media transacts or has transacted business in this District and throughout the United States.

14. Defendant Lin Miao ("Miao") has been an owner and officer of Tatto and an officer of Shaboom and Chairman Ventures. He has also been listed as a contact or authorized person in various state filings and corporate documents for Bune, Mobile Media, Virtus Media, and Galactic Media. At all times material to this complaint, acting alone or in concert with others, Miao formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Tatto Corporate Defendants (as defined below), including the acts and practices set forth in this Complaint. Since at least the Spring of 2011, acting alone or in

concert with others, Miao formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Bullroarer, including the acts and practices set forth in this Complaint. Defendant Miao resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

15. Defendant Andrew Bachman ("Bachman") has been an owner and officer of Tatto and an officer of Shaboom and Virtus Media. His personal residence has been used as the mailing address for several of the Corporate Defendants, including Shaboom, Bune, and Virtus Media. Until at least the Fall of 2012, acting alone or in concert with others, Bachman formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Tatto Corporate Defendants (as defined below), including the acts and practices set forth in this Complaint. Defendant Bachman, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

**COMMON ENTERPRISES**

16. At all times material to this Complaint, and since at least January 2011, Defendants Tatto, Shaboom, Bune, Mobile Media, Chairman Ventures, Galactic Media, and Virtus Media (collectively, "Tatto Corporate Defendants") have operated as a common enterprise while engaging in the unlawful acts and practices alleged herein. The Tatto Corporate Defendants have conducted the business practices described herein through interrelated companies that have common ownership, officers, managers, business functions, employees, and office locations, and that commingled funds. Because the Tatto Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged herein. Individual Defendants Miao and Bachman have formulated, directed, controlled, had the authority to control, or

participated in the acts and practices of the Tatto Corporate Defendants that constitute the Tatto common enterprise.

17. Since at least the spring of 2011, Defendant Bullroarer and the Tatto Corporate Defendants (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the unlawful acts and practices alleged herein. The Corporate Defendants have conducted the business practices described herein through interrelated companies that have common business functions and commingled funds. Further, Bullroarer and Tatto are commonly owned by Ozura World, Ltd., a Hong Kong-based company. Because the Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged herein for the period of the common enterprise. Individual Defendants Miao and Bachman have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the Bullroarer/Tatto common enterprise.

**COMMERCE**

18. At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

**DEFENDANTS' ACTIVITIES**

19. Defendants have been operating a scam in which they have been billing consumers for text message-based subscription services even though the consumers did not authorize any purchase of the services. Defendants' purported services have included sending periodic text messages containing celebrity gossip alerts, "fun facts," horoscopes, and similar kinds of information. Using the billing mechanisms of mobile phone companies, Defendants have been causing unauthorized charges for these services to be placed on consumers' mobile phone bills, often with abbreviated and uninformative descriptions. Many consumers have paid their mobile bills without ever noticing these charges; others have paid

and then unsuccessfully have disputed the third-party charges without obtaining a refund; still others have disputed the charges and succeeded in having them removed only after substantial effort. Defendants have been receiving a substantial percentage of the unauthorized charges that have been collected, and have made millions of dollars.

**The Placement of Third-Party Charges on Phone Bills**

20. Mobile phone bills can include charges for so-called "Premium SMS" services provided by third-party merchants rather than a consumer's mobile phone company. Premium SMS services allow consumers to purchase digital goods or services by using text messages (also known as "SMS" messages) sent to and from their mobile phones. For example, a merchant – known in this context as a "content provider" – may offer digital content, such as a game that can be played on a consumer's phone that can be ordered and purchased by the consumer using text messaging. The charge for the service is placed on the consumer's monthly mobile bill.

21. In order to send commercial text messages to consumers and place charges on a phone bill, a content provider uses a five- or six-digit number called a "short code." There are several ways consumers can be enrolled in Premium SMS services using short codes. The content provider typically advertises to consumers and instructs them on how to order the service via text message. Under standard industry practice, the content provider generally requires the consumer to take two steps to confirm a purchase, a practice that is known as "double opt-in" verification. For example, a consumer can send a text message from a cell phone to the short code and receive in response a text message describing how to opt-in to the subscription program, which typically involves replying to the text message with a particular keyword. The content provider enters into agreements – often via a third party known as an "aggregator" – to place charges on specific mobile carriers' mobile phone bills. The content provider is responsible for delivering the

digital content to the consumer's mobile phone, and it bills the consumer and collects charges by having the phone company place the appropriate charge on the consumer's bill. The aggregator then transmits the content provider's share of the funds from the mobile phone company to the content provider.

**Defendants' Scam**

22. Defendants purportedly have been providing a number of Premium SMS services through various short codes. However, unlike legitimate content providers, Defendants have not been obtaining consumers' knowing agreement to pay for their purported services. Instead, they have been placing the charges onto consumers' phone bills without their consent – a practice known as "cramming" – and profiting when consumers pay their phone bills without noticing these unauthorized charges.

23. In this case, Defendants have offered their purported services using multiple short codes. For example, Tatto and Bune have offered a subscription service called "Hollywood Stars Live! Alerts," which purportedly provides three weekly celebrity-related text messages, using short codes 88044 and 580580. Bune also has advertised a subscription service called "FlashFacts" which purportedly provides three "fun facts" a week by text message, using the short code 58678. Galactic Media and Mobile Media Products each have offered a subscription service called "MyLuvCrush," which purportedly provides an initial "love reading" and up to 12 horoscope readings per month by text message using the short code 60206. Each subscription typically costs $9.99 per month and automatically renews every month. All of the Defendants have offered similar kinds of services using other short codes as well. Defendants have operated and billed for such services on multiple mobile phone networks.

24. Defendants have been placing the charges on consumers' mobile phone bills despite the fact that consumers did not knowingly sign up for their services. In some instances, consumers have received text messages containing

random factoids or other types of message alerts, but these messages often appear merely to be spam, which consumers therefore ignore. Defendants also likely have been using misleading website offers to obtain consumers' phone numbers and to sign them up for subscription services. For example, one website informed consumers that they had won free Justin Bieber tickets, which they could claim by completing an online quiz and entering their score. One of the following screens directed the consumer to enter his/her cell phone number. After the quiz was complete, consumers did not receive Justin Bieber tickets, yet it is likely that any phone numbers entered were signed up for one of Defendants' services.

25. Defendants have been placing these charges even though the consumers did not knowingly consent to sign up for the services that Defendants purportedly provide, whether by a "double opt-in" or any other process in which a consumer provides express informed consent to the charges.

26. Many consumers have not noticed Defendants' charges included on their phone bills, and have paid their bills in full. The charges have often appeared on a bill in an abbreviated and confusing form. For example, the billing descriptor for Bune's "MobChance Gossip Alerts" text alert service has been "77050IQ12CALL8663611606." Similarly, the billing descriptor for Bullroarer's "Tonetime Content" service has been "25184USBFIQMIG." The $9.99 per month charge has been included in the total amount due for the entire mobile phone bill. Consumers may not notice slight variations in their bill totals from month to month. Indeed, consumers billed by Defendants often failed to notice the charges on their bills. Further, the charges have been recurring – $9.99 each month – unless and until the consumer notices the charge and takes action to unsubscribe.

27. In some cases, consumers have noticed the unauthorized charges on their phone bills and attempted to dispute those charges and/or any additional charges related to the Defendants that they may have paid in the past. This process has been difficult and often unsuccessful. In numerous instances, the Defendants'

contact phone numbers were not provided with the description on the phone bill. If consumers were able to find a phone number, they have often reached representatives who claim they will provide refunds, but do not. In many cases, consumers have not received refunds for all of the months that they paid the bogus charges.

28. Consumers who have noticed the crammed charges have complained in significant numbers, and some phone companies have refunded between 20 and 40% of all charges on certain short codes in various months. Defendants have continued to receive Better Business Bureau and other complaints from consumers who did not expressly sign up for Defendants' services. Throughout 2011 and 2012, two major phone companies suspended many of Defendants' short codes for excessive refund rates and misrepresentations in Defendants' marketing and advertising. Another phone company warned Defendants of excessive refund rates on certain of the short codes.

29. Defendants have been receiving a substantial portion of the charges collected by the mobile phone company, authorized or not. Defendants have made millions from the unauthorized charges, notwithstanding that many consumers have complained and that some phone companies have terminated their short codes.

30. All the Defendants have been participating in and profiting from this activity. Defendant Miao has been at the center of the fraudulent operations. At various times, he has held himself out as the President, Treasurer, Secretary, Director, CEO, and owner of Tatto. He has also been an officer of Shaboom and Chairman Ventures, and has been listed as a contact or authorized person in various state filings and corporate documents for Bune, Mobile Media, Virtus Media, and Galactic Media. He has also identified himself as an officer of Ozura World, Ltd., the parent company of both Bullroarer and Tatto. He is the sole signatory on several of Tatto's corporate bank accounts, and he personally signed

checks as part of the daily operations of the companies. He has also been the signatory on forms submitted to the wireless carriers in connection with the companies' operations. He has directly received at least twenty-nine million dollars from the scam, and he has knowledge and control of the Corporate Defendants' unlawful behavior.

31. Defendant Bachman was an owner of Tatto and an officer of Shaboom and Virtus Media during much of the relevant time period. At least until recently, he directed, participated in, and profited from the Corporate Defendants' fraudulent operations. His personal residence has been used as the mailing address for several of the Tatto Corporate Defendants, including Shaboom, Bune, and Virtus Media. He is also listed as the applicant and billing contact on several applications to renew short code leases involved in the scam. He has directly received at least four and a half million dollars from the scam, and he has had knowledge and control of the Corporate Defendants' unlawful behavior.

## VIOLATIONS OF THE FTC ACT

32. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce." Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

33. Acts or practices are unfair under Section 5 of the FTC Act if they cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

## COUNT I

### Deceptive Acts and Practices in Violation of Section 5 of the FTC Act

34. In numerous instances in connection with the sale of Premium SMS services, including "Hollywood Stars Live! Alerts" and "MyLuvCrush" and similar services, Defendants have represented, directly or indirectly, expressly or

by implication, that consumers are obligated to pay for charges for Defendants' Premium SMS services appearing on consumers' mobile phone bills.

35. In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 34 of this Complaint, consumers were not obligated to pay the charges because the consumers did not authorize charges for Defendants' services corresponding to the charges on the bill.

36. Therefore, Defendants' representations as set forth in Paragraph 34 of this Complaint are false or misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II

## Unfair Billing Practices in Violation of Section 5 of the FTC Act

37. In numerous instances, Defendants have caused consumers' mobile phone accounts to be billed without having previously obtained the consumers' express informed consent.

38. Defendants' actions have caused or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

39. Therefore, Defendants' practices as set forth in Paragraph 37 constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a) and (n).

## CONSUMER INJURY

40. Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

41. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and other such relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, § 53(b), and the Court's own equitable powers, requests that the Court:

A. Award such preliminary and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including, but not limited to, a temporary and preliminary injunction, asset freeze, appointment of a receiver, an evidence preservation order, and expedited discovery;

B. Enter a permanent injunction to prevent future violations of the FTC Act by Defendants;

C. Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, including, but not limited to, rescission and reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies;

D. Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,
David Shonka
Acting General Counsel

Heather Allen, DC Bar No. 488281
(Phone: 202-326-2038)
(Email: hallen@ftc.gov)
Duane Pozza, CA Bar No. 225933
(Phone: 202-326-2042)
(Email: dpozza@ftc.gov)
Jane Ricci, DC Bar No. 983593
(Phone: 202-326-2269)
(Email: jricci@ftc.gov)
Robin Thurston, IL Bar No. 6293950
(Phone: 202-326-2752)
(Email: rthurston@ftc.gov)
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
Fax: (202) 326-2752

Faye Chen Barnouw, Local Counsel
CA Bar No. 168631
(Phone: 310-824-4343)
(Email: fbarnouw@ftc.gov)
Federal Trade Commission
10877 Wilshire Blvd., Ste. 700
Los Angeles, CA 90024
Fax: (310) 824-4380

Attorneys for Plaintiff
Federal Trade Commission

Dated: Dec. 4, 2013

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge Dale S. Fischer and the assigned Magistrate Judge is Frederick F. Mumm.

The case number on all documents filed with the Court should read as follows:

**2:13CV8912 DSF FFMx**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

December 4, 2013
Date

By J.Prado
Deputy Clerk

---

## NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

[X] Western Division
312 N. Spring Street, G-8
Los Angeles, CA 90012

[ ] Southern Division
411 West Fourth St., Ste 1053
Santa Ana, CA 92701

[ ] Eastern Division
3470 Twelfth Street, Room 134
Riverside, CA 92501

**Failure to file at the proper location will result in your documents being returned to you.**

ORIGINAL

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself [ ] )

Federal Trade Commission

**DEFENDANTS** ( Check box if you are representing yourself [ ] )

Tatto, Inc., also d/b/a WinBigBidLow and Tatto Media, Bullroarer, Inc., Shaboom Media, LLC, Bune, LLC, Mobile Media Products, LLC, Chairman Ventures, LLC, Galactic Media, LLC, Virtus Media, LLC, Lin Miao, and Andrew Bachman

(b) County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Los Angeles
*(IN U.S. PLAINTIFF CASES ONLY)*

(c) Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information.

Heather Allen, Duane C. Pozza, Jane Ricci, and Robin Thurston, Federal Trade Commission, 600 Pennsylvania Ave., NW, NJ-3158, Washington, DC 20580; (202-326-2042); Faye Chen Barnouw, Federal Trade Comm, 10877 Wilshire Blvd, Ste 700, Los Angeles, CA 90024 (310-824-4380).

Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- [X] 1. U.S. Government Plaintiff
- [ ] 3. Federal Question (U.S. Government Not a Party)
- [ ] 2. U.S. Government Defendant
- [ ] 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business in this State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. ORIGIN** (Place an X in one box only.)

- [X] 1. Original Proceeding
- [ ] 2. Removed from State Court
- [ ] 3. Remanded from Appellate Court
- [ ] 4. Reinstated or Reopened
- [ ] 5. Transferred from Another District (Specify)
- [ ] 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** [ ] Yes [X] No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** [ ] Yes [X] No [ ] **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Unfair and deceptive acts violating Section 5 of the FTC Act, 15 U.S.C. Sec. 45.

**VII. NATURE OF SUIT** (Place an X in one box only).

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce/ICC Rates/Etc.
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced & Corrupt Org.
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/Exchange
- [X] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Info. Act
- [ ] 896 Arbitration
- [ ] 899 Admin. Procedures Act/Review of Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loan (Excl. Vet.)
- [ ] 153 Recovery of Overpayment of Vet. Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment

**REAL PROPERTY CONT.**
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Fed. Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury-Med Malpratice
- [ ] 365 Personal Injury-Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**TORTS PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accomodations
- [ ] 445 American with Disabilities-Employment
- [ ] 446 American with Disabilities-Other
- [ ] 448 Education

**PRISONER PETITIONS**

**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

**Other:**
- [ ] 540 Mandamus/Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Ret. Inc. Security Act

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405 (g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405 (g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS-Third Party 26 USC 7609

**FOR OFFICE USE ONLY:** Case Number: CV13-8912

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| **Question A: Was this case removed from state court?** ☐ Yes ☒ No | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| If "no, " go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| **Question B: Is the United States, or one of its agencies or employees, a party to this action?** ☒ Yes ☐ No | If the United States, or one of its agencies or employees, is a party, is it: A PLAINTIFF? Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT? Then check the box below for the county in which the majority of PLAINTIFFS reside. | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| If "no, " go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☒ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| **Question C: Location of plaintiffs, defendants, and claims?** (Make only one selection per row) | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**C.1. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the SOUTHERN DIVISION. Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. →

**C.2. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the EASTERN DIVISION. Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ↓

Your case will initially be assigned to the WESTERN DIVISION. Enter "Western" in response to Question D below.

| **Question D: Initial Division?** | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: → | Western |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court** and dismissed, remanded or closed? [X] NO [ ] YES

If yes, list case number(s): ____________

**IX(b). RELATED CASES:** Have any cases been previously filed **in this court** that are related to the present case? [X] NO [ ] YES

If yes, list case number(s): ____________

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)

[ ] A. Arise from the same or closely related transactions, happenings, or events; or

[ ] B. Call for determination of the same or substantially related or similar questions of law and fact; or

[ ] C. For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ] D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** [signature] DATE: 12/4/13

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |