DAVID SCHONKA
Acting General Counsel
HEATHER ALLEN
DUANE C. POZZA (CA Bar No. 225933)
JANE RICCI
ROBIN THURSTON
hallen@ftc.gov, dpozza@ftc.gov
jricci@ftc.gov, rthurston@ftc.gov
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Tel: (202) 326-3224
Fax: (202) 326-3629

Local Counsel
FAYE CHEN BARNOUW (CA Bar No. 168631)
fbarnouw@ftc.gov
Federal Trade Commission
10877 Wilshire Blvd., Ste. 700
Los Angeles, CA 90024
Tel: (310) 824-4343
Fax: (310) 824-4380

Attorneys for the Plaintiff
Federal Trade Commission

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> TATTO, INC., *et al.*, <br><br> Defendants. | Case No. CV13-8912 DSF (FFMx) <br><br> **PLAINTIFF'S RECOMMENDATION FOR TEMPORARY RECEIVER** |

1

DAVID SHONKA
Acting General Counsel
HEATHER ALLEN
DUANE C. POZZA (CA Bar No. 225933)
JANE RICCI
ROBIN THURSTON
hallen@ftc.gov, dpozza@ftc.gov
jricci@ftc.gov, rthurston@ftc.gov
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Tel: (202) 326-3224
Fax: (202) 326-3629

Local Counsel
FAYE CHEN BARNOUW (CA Bar No. 168631)
fbarnouw@ftc.gov
Federal Trade Commission
10877 Wilshire Blvd., Ste. 700
Los Angeles, CA 90024
Tel: (310) 824-4343
Fax: (310) 824-4380

Attorneys for the Plaintiff
Federal Trade Commission

ORIGINAL

FILED
CLERK, U.S. DISTRICT COURT
DEC - 5 2013
CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

LODGED
CLERK, U.S. DISTRICT COURT
DEC - 4 2013
CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>TATTO, INC., *et al.*,<br><br>Defendants. | Case No. CV13-8912 DSF (FFMx)<br><br>**PLAINTIFF'S RECOMMENDATION FOR TEMPORARY RECEIVER** |

1

Plaintiff Federal Trade Commission, in support of its *ex parte* Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue, proposes Thomas W. McNamara as a temporary receiver in this case. Mr. McNamara, a partner at Ballard Spahr in San Diego, has expressed a willingness to serve as temporary receiver and has the necessary experience and qualifications to hold the position.

Mr. McNamara has been practicing law for 27 years. He is a former federal prosecutor, having served as an Assistant United States Attorney in San Diego for 11 years and focusing on major economic crimes and public corruption. He has extensive experience serving as a receiver in government law enforcement actions. For example, Mr. McNamara has served as the court-appointed receiver in the following cases: *FTC v. Asset & Capital Management Group, et al.*, Case No. CV13-5267 DSF(JCx) (C.D. Cal. 2013) (debt collection case); *FTC v. Ideal Financial Solutions, et al.*, Case No. 2:13-cv-00143-MMD (D. Nev. 2013) (case involving unauthorized billing); *FTC v. Ambrosia Web Design, et al.*, Case No. 2:12-cv-02248-FJM (D. Ariz. 2012) (debt relief case); *FTC v. Sameer Lakhany, Precision Law Center, et al.*, Case No. 8:12-cv-00337-CJC-JPR (C.D. Cal. 2012) (mortgage modification case); *FTC v. Forensic Case Management Services, Inc., et al.*, Case No. 2:11-cv-07484-RGK-SS (C.D. Cal. 2011) (debt collection case); *FTC v. National Sales Group, et al.*, Case No. 1:11-cv-1230 (N.D. Ill. 2011) (telemarketing case); *FTC v. Health Care One, LLC, et al*, Case No. 8:10-cv-01161-JVS-RNB (C.D. Cal. 2010) (telemarketing case); *CFTC et al. v. MAK 1 Enterprises Group LLC, et al.*, Case No. 3:09-cv-01783-BEN-WVG (S.D. Cal. 2009) (Ponzi scheme); *FTC et al. v. U.S. Foreclosure Relief, et al.*, Case No. 8:09-cv-00768-JVS-MLG (C.D. Cal. 2009) (mortgage modification case); *SEC v. Global Money Management L.P., et al.*, Case No. 3:04-cv-00521-BTM-WMC (S.D. Cal. 2004) (Ponzi scheme); *FTC v. Seasilver, et al.*, Case No. 2:03-cv-00676-RLH-LRL (D. Nev. 2003) (dietary supplement case); and *SEC v.*

| 1 | *Millennium Financial, et al.*, Case No. 1:02-cv-03901-LAP (S.D.N.Y. 2002) (case
| 2 | involving sale of shares in bogus pre-IPO companies).
| 3 |     Mr. NcNamara would likely use other Ballard Spahr attorneys and personnel
| 4 | in the receivership. A copy of Mr. McNamara's resume, together with a cover
| 5 | letter detailing his firm's hourly rates, is attached hereto.
| 6 | Dated: Dec. 4, 2013    Respectfully submitted,

David Shonka
Acting General Counsel

*/s/ Heather Allen*

Heather Allen, DC Bar No. 488281
(Phone: 202-326-2038)
(Email: hallen@ftc.gov)
Duane Pozza, CA Bar No. 225933
(Phone: 202-326-2042)
(Email: dpozza@ftc.gov)
Jane Ricci, DC Bar No. 983593
(Phone: 202-326-2269)
(Email: jricci@ftc.gov)
Robin Thurston, IL Bar No. 6293950
(Phone: 202-326-2752)
(Email: rthurston@ftc.gov)
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
Fax: (202) 326-3629

<u>Local Counsel</u>
Faye Chen Barnouw, CA Bar No. 168631
(Phone: 310-824-4343)
(Email: fbarnouw@ftc.gov)
Federal Trade Commission
10877 Wilshire Blvd., Ste. 700
Los Angeles, CA 90024

Attorneys for Plaintiff
Federal Trade Commission



655 West Broadway, Suite 1600
San Diego, CA 92101-8494
TEL 619.696.9200
FAX 619.696.9269
www.ballardspahr.com

Thomas W. McNamara
Tel: 619.487.0799
Fax: 619.696.9269
mcnamarat@ballardspahr.com

November 4, 2013

*Via E-mail (hallen@ftc.gov)*

Heather Garms Allen
Attorney, Division of Financial Practices
Federal Trade Commission
600 Pennsylvania Ave., NW
Mail Stop NJ-3158
Washington, DC 20580

Re: <u>Potential Receivership – Central District of California</u>

Dear Ms. Allen:

As a follow-up to our recent phone conversation, I am submitting this general note of interest and qualification for your consideration.

I understand that the Federal Trade Commission ("FTC") is seeking a receiver in an action it may file in the Central District of California within the next month or so. The potential defendants are alleged to operate a business which makes unauthorized charges to consumer cellular phone bills. At this stage, the FTC is unsure of the location from which the defendants are operating.

As you know, I have substantial experience and a successful track record in receivership appointments. I have been appointed receiver in matters brought by the FTC, the Securities and Exchange Commission, the Commodity Futures Trading Commission and several state regulatory agencies. I have attached a highlight list of these receivership appointments. Of particular relevance are eight FTC receivership cases, *FTC v. Seasilver, et al.*, *FTC v. U.S. Foreclosure Relief, et al.*, *FTC v. Health Care One, LLC, et al.*, *FTC v. National Sales Group, et al.*, *FTC v. Forensic Case Management, et al.*, *FTC v. Precision Law Center, et al.*, *FTC v. Ambrosia Web Design, et al.*, and *FTC v. Asset & Capital Management Group, et al.* These operations involved multiple offices and business generation through the use of the internet and telephone call centers. The *FCMS* matter involved a sophisticated debt collection operation.

A. <u>Background</u>

I have a diverse background in civil and criminal law. After law school and a one-year judicial clerkship, I was an associate in the Washington, D.C. office of Finley Kumble for four years, principally involved in corporate securities business matters and securities litigation.

DMWEST #10349644 v1

In 1991, I began an eleven year career as a federal prosecutor when I joined the U.S. Attorney's office in San Diego. My primary focus was major economic crimes and public corruption. For a thirteen-month period, 1997-1998, I was detailed to Washington, D.C. as a prosecutor with the Campaign Finance Task Force growing out of the 1996 Presidential election.

I left the government and returned to private practice in 2002. I have since focused on civil litigation, white collar matters, internal investigations, and receiverships in matters brought by regulatory enforcement agencies. Not only have receiverships been an important part of my practice, they have also been the most meaningful. I am proud of the work that my team has done on behalf of defrauded investors and consumers.

My experience as a prosecutor has been quite helpful in receiverships. Many receiverships involve conduct that may be criminal or subject to other state regulatory enforcement. We are able to quickly identify and preserve evidence that may be relevant to the receivership and to criminal and regulatory authorities. We have been able to work cooperatively with local and federal authorities as we know what may be important to them.

I will use other Ballard Spahr lawyers and personnel in the receivership. Andrew W. Robertson is a key member of the receivership team, who has been involved in each of our receiverships. He has a background in business and law which has made him a versatile asset. After graduating from Brown University and UCLA Law School, he clerked for federal judge William P. Gray in Los Angeles. He was then a business litigator for 16 years as an associate and partner with Lillick McHose and Pillsbury Madison in Los Angeles with a practice involving intellectual property, banking, securities and general business matters. During this period, he was also involved as a leader and executive in the charity and non-profit arena – as general chairman of the Los Angeles Open, the oldest civic-sponsored event on the PGA Tour, and as President of the Los Angeles Junior Chamber of Commerce. In 1990, he moved to San Diego as principal in a start-up sporting goods venture – products manufactured in China and distributed throughout the world – where he was responsible for operations, finance and legal. After ten years of operational and finance experience in that and other businesses, he joined our firm in October 2002 and has since specialized in receiverships as both a lawyer and an experienced finance and operations executive.

We would likely use CPA Thad Meyer, the president of Alliance Turnaround Management, Inc. based in La Jolla, California to assist in the forensic accounting needs of the receivership. We have worked with Mr. Meyer successfully in other receiverships and found his work product to be first rate. He has the ability to scale up for the first few crucial days of a receivership and then scale down once the financial records and assets are under control. His rates are very reasonable.

We also have extensive contacts with investigative and computer forensic professionals, who are generally former or present law enforcement. These professionals usually play an important role in the very initial stages of receiverships by providing investigative information about locations, defendants, and potential assets, as well as in preserving computer evidence once we are on site.

As a result of our combined backgrounds and our network of professionals, we have significant investigative, asset tracing, litigation and receivership experience. We are well qualified to handle even the most complex receivership. We are ready and willing to ably serve the public's interests as receiver in this matter.

B.      **Scope of Receivership**

Based upon our brief call, I assume that the receiver's primary mission will be to seize operational control of the business and of all bank accounts and other assets. Generally, the TROs require the receiver to determine initially whether the business can be operated lawfully and profitably. That will be the primary mission of the initial stages of the receivership. If we determine it can be so operated, we will report to the Court. If we determine that the business cannot be so operated, we would terminate operations, investigate the extent of consumer fraud, take appropriate corrective action, and report to the Court. We would also vigorously pursue legal claims, and trace and recover receivership assets. These are all tasks we have performed in other receiverships.

As noted above, we have a long track record of working cooperatively with law enforcement and regulators in receiverships. At the same time, we have also been successful in working cooperatively with receivership defendants. We will strive to maintain open communications with and provide timely responses to receivership defendants. Generally, the cooperative nature of our relationships with receivership defendants has benefitted all involved.

C.      **Conflicts of Interest**

We have run the corporate and individual names of those involved through Ballard Spahr's conflict check system and there were no conflicts.

D.      **Resources and Billing Rates**

We are mindful that, in the end, receivers in matters like this really work for the defrauded consumers and that receivership expenses ultimately reduce any net recovery for those consumers. We, therefore, discount our standard hourly rates. I reduce my hourly rates by 15%. I also reduce the rates of the Ballard Spahr attorneys and personnel who will be assisting in the receivership by 15%, which results in hourly rates ranging from $136 to $463 for the people we anticipate working on the matter. We work hard to staff tasks with the most cost-effective personnel. We do not charge for regular telephone, faxes and routine administrative matters that can be handled by our administrative staff.

We require similar discounts for professionals who team with us in receiverships. Mr. Meyer, the CPA who will assist us, has agreed to reduce his hourly rate by 15% which results in an hourly rate of $157.25. Similarly, the computer forensic company we use, Dataclues, Inc., will reduce the hourly rates for its forensic team members to $175 per hour, which is a 30% discount. As a result of

the discounts and staffing efficiencies, we have historically been able to get a resulting blended rate for the people working on the case in the neighborhood of $200 to $225 per hour.

Thank you for contacting me about this receivership opportunity. I am interested in serving and am confident in our ability to act on behalf of the Court and administer a fair and efficient receivership. I look forward to talking to you again and am happy to answer additional questions and provide further information.

Very truly yours,

Thomas W. McNamara

TWM/
Enclosures

# Ballard Spahr
### LLP

655 West Broadway, Suite 1600
San Diego, CA 92101-8494
TEL 619.696.9200
FAX 619.696.9269
www.ballardspahr.com

## THOMAS W. MCNAMARA - RECEIVERSHIP EXPERIENCE

*FTC v. Asset & Capital Management Group, et al.*, SACV13-01107-DSF (JCx), U.S. District Court, Central District of California.

Defendants in this case operated debt collection businesses in which they acquired legitimate bank debt at deep discounts and then deployed aggressive and deceptive telephone collection techniques which violated the Fair Debt Collection Practices Act. We took possession of the two active sites and suspended operations after concluding they could not be operated lawfully and profitably going forward. One of the Receivership Defendants was also an IT and telecommunications provider to some 20 other non-party debt collection operators – we were able to secure an order from the court directing the Receiver to collect all of this Receivership Defendants' equipment from those sites. Stipulated Preliminary Injunctions have now been entered as to all Defendants.

       FTC Contact: Seena D. Gressin, 600 Pennsylvania Ave., N.W., Washington, D.C. 20580; 202-326-2717.

       FTC Contact: Gregory A. Ashe, 600 Pennsylvania Ave., N.W., Washington, D.C. 20580; 202-326-3719.

*FTC v. A to Z Marketing, et al.*, SACV13-00919-DOC (RNBx), U.S. District Court, Central District of California.

These Defendants operated loan modification schemes in California and Nevada. One group maintained offices in Orange County, California and Las Vegas, Nevada. The other was based in Orange County. Both deployed the same basic stratagem – drive consumers to a loan modification telemarketing room through sophisticated mailers designed to create the appearance of an official government mailer; attach a law firm name to the telemarketing room and give consumers the impression they are retaining a legal services firm; enter into a nominal relationship with an attorney who supposedly owns and operates the front law firm and create a pseudo network of affiliate attorneys in other states; and charge illegal advance fees. One group added a significant variation – the loan processors provided personalized service were all based in Kolkata, India. In the process of taking possession of the sites identified in the initial TRO, we were able to identify and ultimately take possession of several additional sites operated by affiliates of the named Defendants.

DMWEST #10192391 v1

Atlanta | Baltimore | Bethesda | Denver | Las Vegas | Los Angeles | New Jersey | Philadelphia | Phoenix | Salt Lake City | San Diego
Washington, DC | Wilmington | www.ballardspahr.com

The FTC's Complaint and TRO application alleged multiple specific violations of the FTC Act and the MARs rule prohibiting advance fees. We concluded that this business could not operate lawfully and profitably in the context of this receivership and suspended operations indefinitely. Stipulated Preliminary Injunctions have now been entered as to all Defendants.

>FTC Contact: Steven W. Balster, 1111 Superior Avenue,
>Suite 200, Cleveland, OH 44114; 216-263-3401
>
>FTC Contact: Jonathan L. Kessler, 1111 Superior Avenue,
>Suite 200, Cleveland, OH 44114; 216-263-3436.

*FTC v. Ideal Financial Solutions, et al.*, 13-CV-00143-MMD-GWF, U.S. District Court, District of Nevada.

These Defendants ran a particularly brazen fraud – they ran unauthorized charges (usually $29.95) against the bank account and credit card accounts of consumers who had purchased no product or services from them. Consumer account information was obtained through payday loan brokers and middlemen who were in possession of high volumes of consumer payday loan applications. The apparent premise of the business was that most consumers would not notice the unauthorized charge or not pursue a chargeback. Consumers who did call to complain were told that they had purchased financial counseling services, payday loan matching services, or assistance in completing payday loan applications.

The FTC's Complaint and TRO application alleged multiple specific violations of the FTC Act. We concluded that this business could not operate lawfully and profitably in the context of this receivership and suspended operations indefinitely.

>FTC Contact: Megan E. Gray, 600 Pennsylvania Avenue NW,
>Mailstop M-8102B, Washington, D.C. 20580; 202-326-3408
>
>FTC Contact: Michael Waller, 600 Pennsylvania Avenue
>NW, Mailstop M-8102B, Washington, D.C. 20580; 202-326-2902.

*FTC v. Ambrosia Web Design, et al.*, CV-12-2248-PHX-FJM, U.S. District Court, District of Arizona.

Defendants operated a credit card interest rate reduction call room in Tempe, Arizona. Consumers were driven to the call room by robocalls orchestrated by third-party vendors. Unwary consumers who pressed "1" in response to the automated message were directed to the Tempe call room which generally identified itself as some variant of "card services." The telemarketers then tried to sell a menu of interest rate savings vehicles from transfers to new zero balance accounts to direct negotiations with the current credit card company.

Upon appointment, we took over the call room which had approximately 40 employees ranging from "Qualifiers" who took the initial calls, "Closers" who took those calls from consumers who expressed interest, "Financial Advisors" who communicated with card companies, customer service, and accounting.

The FTC's Complaint and TRO application alleged multiple specific violations of the FTC Act and the TSR. We found that the core business was unprofitable and predicated, at the threshold, on two illegal practices – robocalls and unauthorized merchant account factoring. As such, we concluded that this business could not operate lawfully and profitably in the context of this receivership, suspended operations indefinitely, and returned the business premises to the landlord. The case remains pending, although we understand that a settlement, in principle, has been reached.

>   FTC Contact: Thomas B. Carter, 1999 Bryan Street, Suite
>   2150, Dallas, TX 75201; 214-979-9372.
>
>   FTC Contact: Jason C. Moon, 1999 Bryan Street, Suite 2150,
>   Dallas, TX 75201; 214-979-9378.

*FTC v. Sameer Lakhany, Precision Law Center, et al.*, SACV 12-0337-CJC, U.S. District Court, Central District of California.

Defendants operated a loan modification call room in Santa Ana, California using a thinly disguised illegal advance fee collection process. Defendants claimed their businesses were "non-profits" which offered a "forensic audit" (for a fee) followed by a "free" loan modification. For a period of about eight months, the offerings to consumers evolved into "mass joinder" lawsuits. A number of lawsuits were actually filed, but aside from a very brief period of time, there was no licensed attorney involved. All the cases were dismissed by the courts for failure to serve the complaint on the defendant banks or for failing to respond to motions filed by the banks. At the time of the FTC's action, defendants were telling consumers that they were actively looking to "merge" the mass joinder business with an actual law firm and were back to actively pursuing loan modification clients using the non-profit forensic audit as a teaser.

After appointment, we took over the call room with approximately 20 active telemarketers, suspended operations and communicated with the consumer customers. After court approval, we closed the facilities and liquidated the on-site furniture and equipment. We were able to employ the on-site data base and identify approximately 1,100 paying loan modification customers, some 10% of whom actually secured some form of modification, and approximately 700 consumers who made payments to become included in a mass joinder litigation. Orders for Permanent Injunction were entered February 28, 2013.

>   FTC Contact: Mark L. Glassman, 601 New Jersey: Ave.
>   N.W., Mail Drop NJ-3158, Washington, DC 20580; 202-326-
>   2826.

*FTC v. Forensic Case Management Services, Inc., et al.*, LACV11-7484-RGK, U.S. District Court, Central District of California.

Defendants operated a telephone-driven collection business from Van Nuys, California with approximately 50 telemarketer/collectors soliciting small businesses with unpaid receivables and then pursuing debtors on behalf of those small businesses. The FTC action alleged multiple unfair business practices, fraud, and violations of the Fair Debt Collection Practices Act. In addition to telephone collection, these defendants also operated a "forwarding" business whereby they collected an up-front fee from their small businesses' creditor clients and forwarded collection cases to attorneys around the country, often based on fraudulent representations that specific assets of the debtor had been identified and were ready for seizure.

As court-appointed Receiver, we took over the operation which had a client base of nearly 25,000 small business customers. After determining that fraud was so ingrained in the operation that it could not be operated lawfully, we suspended operations and communicated with the client base, pending a resolution of the underlying case. Consent Judgments were entered in January, 2013.

        FTC Contact: Christopher T. Koegel, Staff Attorney, 601 New Jersey Avenue, N.W., Mail Drop NJ-3158, Washington, DC 20580; 202-326 2761.

*FTC v. National Sales Group, et al.*, 11 C 1230, U.S. District Court, Northern District of Illinois, Eastern Division.

Defendants operated an internet "jobs site" from a telemarketing boiler room in Santa Barbara, California. National Sales Group described itself as a "recruiting firm," but its real business model was to harvest job-seeker leads from multiple online sources and then drive those leads to the boiler room where 20+ telephone sales personnel offered and sold them various job-seeking services and materials, all under the guise that it somehow represented actual employers. We took over the Santa Barbara call room and, after confirming the deception at the core of the business, shut it down. We coordinated with FTC staff as they completed settlements and Consent Judgments with the defendants, which were entered on January 19, 2012.

        FTC Contact: Guy G. Ward, Staff Attorney, 55 West Monroe Street, Suite 1825, Chicago, IL 60603; (312) 960-5634.

*FTC v. Health Care One, LLC, et al*, CV-10-1161-JVS, U.S. District Court, Central District of California.

Defendants operated telemarketing call rooms selling "health care discount programs" to consumers nationwide. We took over call rooms in Tempe, Arizona and Laguna Hills, California. After we confirmed the deceptive nature of the defendants' selling practices, we immediately shut down these facilities. We worked with the FTC in tracing

financial transactions, collecting identified assets for inclusion in a future FTC redress program, and unwinding the relationships between the defendants and sub-marketers selling the same products under their own brand names. Consent Judgments were entered on February 5, 2011 and April 18, 2011.

> FTC Contact: Faye Chen Barnouw, Staff Attorney, 10877 Wilshire Blvd., Suite 700, Los Angeles, CA 90024; 310-824-4343.

*FTC/California Department of Justice v. U.S. Foreclosure Relief, et al.*, CV-09-768-JVS, U.S. District Court, Central District of California.

Defendants ran a large loan modification business. We took over the business, located and reviewed financial records, traced financial transactions, and interviewed principals and key employees in a very short period of time. We were able to provide timely and detailed reports to the district court which, based largely upon our findings, continued the imposition of injunctive relief. We also cooperated with various investigations being conducted by the State Bar of California and the local District Attorney's office. Our suggested consumer redress plan was accepted by the FTC and the court and was implemented by our office with $612,000 disbursed to 1,100 consumers. (The state of Missouri was also a plaintiff in the action.)

> FTC Contact: Sarah Schroeder, Staff Attorney, 901 Market Street, Suite 570, San Francisco, CA 94103; 415-848-5186.

> Attorney General Contact: Dan Olivas, Deputy Attorney General, Los Angeles, CA; 213-897-2705

*FTC v. Seasilver, et al.*, CV-S-03-0676-RLH-LRL, U.S. District Court, District of Nevada.

We took over operational control of the on-going Seasilver dietary supplement business in Carlsbad, California. Seasilver employed more than 500 people and was doing nearly $1 million a day in gross credit card sales of an aloe-based supplement, mostly via its website, based on false and inflated advertising claims. We supervised operation of the company and withdrawal of its improper advertising programs for nearly a year. Control was ultimately returned to the principals after a Consent Decree was entered. The principals are now subject to a $100 million judgment in favor of the FTC.

> FTC Contact: Janice Charter, Staff Attorney, 901 Market Street, Suite 570, San Francisco, CA 94103; 415-848-5115.

*SEC, CFTC, California Department of Corporations v. MAK 1, et al.*, CV-09-1783-BEN, U.S. District Court, Southern District of California.

The MAK 1 defendants ran a $35-40 million foreign exchange Ponzi scheme operation. After appointment, we took over the remaining operations of the company, seized assets and traced financial transactions worldwide. We sought and received contempt orders

from the district court when the defendants failed to produce the company's complete books and records. The defendants have no remaining assets, but we have identified and pursued "clawback claims" as to all investors who received profits and a small group of commissioned sales personnel. At present, we have been able to return 25.25% to investors and expect further distributions as clawback settlement payments are received.

*SEC v. Global Money Management L.P., et al.*, 04-CV-00521-(BTM), U.S. District Court, Southern District of California.

Global Money Management was a San Diego based hedge fund which raised nearly $100 million for an options-driven investment program, but ultimately evolved into a classic Ponzi scheme. GMM was placed in Chapter 11 Bankruptcy while the assets of its General Partner, LF Global Investments, were assembled through the receivership and transferred to the Bankruptcy Estate. The GMM Bankruptcy Estate ultimately returned $31.7 million to 200 approved investors representing 45% of their net losses. At the outset, my former partner Charles La Bella was the Receiver and I was a member of the legal team, but I substituted in as Receiver after Mr. La Bella's return to the government.

*SEC v. Millennium, et al.*, 02 Civ. 3901 (LAP), U.S. District Court, Southern District of New York.

Millennium operated an international telemarketing scam selling shares in bogus pre-IPO companies. The operation was based in Spain with most of the victims residing in the UK. We investigated and ultimately recovered more than $2 million for return to investors. We cooperated with the SEC and the United States Attorney's Offices for the Southern District of California in a related criminal case. We also worked with the United States Attorney's Office in the Southern District of New York to file the first non-terrorism Patriot Act seizure of a correspondent bank account.

*People of the State of California v. The Law Offices of Kramer and Kaslow, et al.*, LC094571, Los Angeles County Superior Court, Central Civil West Division.

The California Attorney General and the State Bar of California brought actions in August, 2011 against multiple lawyers and law firms and their telemarketing affiliates alleging that they were preying on desperate consumer homeowners facing foreclosure by selling them participation in so-called "mass joinder" lawsuits against mortgage lenders. The Attorney General complaint included claims for unfair business practices, false advertising, and the illegal use of non-attorneys to solicit business for a lawyer or law firm. Simultaneously, the State Bar of California sought and received Interim Possession Orders as to the attorney defendants in a separate action.

In the Attorney General action, we were appointed receiver of the Non-Attorney Defendants (the telemarketers who ran call centers at seven different locations) and certain assets of the Attorney Defendants. As Receiver, we took possession of seven separate call room operations in Orange and Los Angeles County and thereafter shut them down. These telemarketers also sold illegal loan modifications services, sometimes disguised as

"alternative dispute resolution", but those services were generally a prelude to the "mass joinder" lawsuit offerings. We worked closely with the Attorney General and the State Bar as they proceeded with their highly complex cases involving more than 6,000 consumer victims who purchased seats in the mass joinder litigation. Both the AG and the State Bar cases have just recently been completed through settlements.

## Practice Areas
- Litigation
- White Collar Defense/Internal Investigations
- Consumer Class Action Litigation
- Securities Enforcement and Litigation

## Education
- University of San Diego School of Law J.D. 1986
- University of Nevada B.S. 1983

## Admitted To Practice
- California
- District of Columbia
- Nevada
- U.S. District Courts for the Central and Southern Districts of California
- U.S. Court of Appeals for the Ninth Circuit



**Thomas W. McNamara**
*Partner*

Direct: 619.487.0799
Fax: 619.696.9269
mcnamarat@ballardspahr.com

Suite 1600
655 West Broadway
San Diego, CA 92101-8494

Thomas W. McNamara is a former federal prosecutor who focuses on white collar criminal defense, securities and regulatory enforcement matters, and complex civil litigation. Mr. McNamara is the Managing Partner of the firm's San Diego office.

Mr. McNamara represents clients in federal and state courts and in grand jury and SEC investigations across the country. He defends companies and individuals in federal criminal investigations, including allegations of health care fraud, computer crimes, financial fraud, and environmental crimes. He conducts internal investigations on behalf of inside counsel and board committees.

Representative government investigation and enforcement matters include the following:

- Representing companies and individuals in investigations of alleged misbranding and adulteration under the Federal Food Drug and Cosmetic Act (FDCA)
- Representing pharmaceutical executives in Off-Label Promotion investigations
- Conducting internal investigations into issues such as allegations of self-dealing, revenue recognition, and employee threats
- Representing hospital executive in Anti-Kickback investigation and prosecution brought by the U.S. Attorney's office; charges dismissed after trial
- Representing senior city executive in SEC investigation into municipal bond issuances and disclosure documents
- Representing attorney in SEC insider trading investigation

  Representing executive in computer crimes investigation and prosecution
- Representing individual in government procurement fraud prosecution

Mr. McNamara's practice also encompasses complex commercial litigation and class

actions in federal and state courts. These matters include consumer class actions, securities class actions, trademark and trade secret lawsuits, and contract disputes.

Representative civil litigation matters include the following:

- Defending Telephone Consumer Protection Act (TCPA) class action cases on behalf of companies
- Defending securities class actions in state and federal court on behalf of developer client
- Defending consumer class actions arising out of the September 2011 Southern California electrical blackout
- Prosecuting Lanham Act violations on behalf of Fortune 500 company
- Defending California Wiretap class action cases on behalf of financial services client

Mr. McNamara has also been appointed receiver by U.S. District Courts throughout the country in actions brought by the SEC, the Commodity Futures Trading Commission, the Federal Trade Commission, and state regulators. Representative matters include:

- *SEC, CFTC, California Department of Corporations v. MAK 1 et al.*, CV-09-1783-BEN, U.S. District Court, Southern District of California
- *SEC v. Global Money Management L.P., et al.*, 04-CV-00521-(BTM), U.S. District Court, *Southern District of California*
- *SEC v. Millennium, et al.*, 02 Civ. 3901 (LAP), U.S. District Court, *Southern District of New York*
- *FTC v. Asset & Capital Management Group, et al., SACV13-01107-DSF (JCx), U.S. District Court, Central District of California*
- *FTC v. A to Z Marketing, et al., SACV13-00919-DOC (RNBx), U.S. District Court, Central District of California*
- *FTC v. Ideal Financial Solutions, et al., 13-CV-00143-MMD-GWF, U.S. District Court, District of Nevada*
- *FTC v. Ambrosia Web Design, et al., CV-12-2248-PHX-FJM, U.S. District Court, District of Arizona*
- *FTC v. Lakhany, Precision Law Center, et al., SACV 12-0337-CJC, U.S.*

# Attorney Profiles

- *District Court, Central District of California*
- *FTC v. Forensic Case Management Services, et al.,* LACV11-7484-RGK, U.S. District Court, Central District of California
- *FTC v. National Sales Group, et al.,* 11 C 1230, U.S. District Court, Northern District of Illinois, Eastern Division
- *FTC v. Health Care One, LLC, et al.,* CV-10-1161-JVS, U.S. District Court, Central District of California
- *FTC/California Department of Justice v. U.S. Foreclosure Relief, et al.,* CV-09-768-JVS, U.S. District Court, Central District of California
- *FTC v. Seasilver, et al.,* CV-S-03-0676-RLH-LRL, U.S. District Court, District of Nevada
- *People v. The Law Offices of Kramer and Kaslow, et al.,* LC 094571, Los Angeles County Superior Court

Mr. McNamara was a federal prosecutor for 11 years for the U.S. Attorney's Office for the Southern District of California, focusing on major economic crimes and public corruption. He worked on the Campaign Financing Task Force in Washington, D.C., investigating violations of federal campaign finance laws during the 1996 presidential election, and was the lead prosecutor in the Task Force's first indicted case. He was awarded the U.S. Department of Justice Director's Award on two separate occasions.

Mr. McNamara has tried numerous cases before judges, juries in state and federal court, as well as before arbitration panels. Before entering private practice, Mr. McNamara served as law clerk to the Honorable Roger D. Foley, of the U.S. District Court for the District of Nevada.

Mr. McNamara holds an AV Peer Review Rating from Martindale-Hubbell, which recognizes professional excellence.

Mr. McNamara serves on the Board of Governors of the San Diego Chapter of the Association of Business Trial Lawyers and is a member of the American Bar Association, Criminal Justice Section, White Collar Crime Committee; the Irish American Bar Association of San Diego; and the San Diego County Bar Association. He is also an elected member of Ballard Spahr's Expanded Board.

Among Mr. McNamara's recent publications are his articles titled "U.S. Government's Crackdown on Corruption Targets Health Care Industry," *Los Angeles Daily Journal,* June 3, 2011; and "FCPA Enforcement in the Health Care Industry:

Stronger Than It Has Ever Been and Getting Stronger," published in BNA's *Medical Devices Law & Industry Report*, June 1, 2011.

**Recent Speaking Engagements**

- Panelist, Bribery and Anti-Corruption panel, "International Business: Navigating Risk on the Road to Growth," Ballard Spahr, City National Bank, Eversheds, and McGladrey seminar, Las Vegas, June 22, 2012

- "Criminal Tax Issues," Nevada Society of Certified Public Accountants, February 16, 2012

- Panelist, "Intensifying Scrutiny – New Laws and Increased Enforcement in Pharmaceutical and Medical Device Industries," Ballard Spahr webinar, December 8, 2011

- "Foreign Corrupt Practices Act and the Life Sciences Industry," Corporate Compliance Program sponsored by the Orange County Regulatory Affairs Discussion Group and the San Diego Regulatory Affairs Network, October 19, 2011

- "How the Dodd-Frank Financial Reform Act and Other Recent Federal Initiatives May Play Out with More Prosecutions, Regulatory Enforcement Actions, and Civil Litigation," Utah State Bar Convention, July 2011

- Panelist, "Money Laundering and Other Compliance Issues," INSOL International Annual Regional Conference 2011, Singapore

Mr. McNamara is a graduate of the University of San Diego School of Law (J.D. 1986), where he was Managing Editor of the *San Diego Law Review*, and the University of Nevada (B.S. 1983).

# Attorney Profiles

**Practice Areas**
- Litigation
- Commercial Litigation

**Education**
- University of California, Los Angeles, School of Law J.D. 1974
- Brown University B.A. 1971

**Admitted To Practice**
- California
- U.S. District Courts for the Central and Southern Districts of California
- U.S. Court of Appeals for the Ninth Circuit
- U.S. Supreme Court



**Andrew W. Robertson**
*Of Counsel*

Direct: 619.487.0783
Fax: 619.696.9269
robertsona@ballardspahr.com

Suite 1600
655 West Broadway
San Diego, CA 92101-8494

Andrew W. Robertson is known for his work in business litigation, banking, and intellectual property, with a focus on general business counseling, corporate governance, civil litigation, and receiverships.

After law school, Mr. Robertson served as a law clerk to the Honorable William P. Gray, of the U.S. District Court for the Central District of California.

From 1991 to 2002, Mr. Robertson was a principal in entrepreneurial and venture capital projects based in the San Diego area, including several sporting goods start-ups.

Mr. Robertson has been involved with numerous civic groups in San Diego and Los Angeles. He has been a member of the Los Angeles Area Chamber of Commerce Board of Directors, the Century Club of San Diego, and the Pasadena Tournament of Roses. He is past President of the Los Angeles Junior Chamber of Commerce. He was the General Chairman of the 1979 Los Angeles Open, a PGA Tour event at Riviera Country Club.

Mr. Robertson was an adjunct professor at Southwestern University Law School, from 1986 to 1991, where he taught clinical courses in trial advocacy, and has been an instructor for the University of San Diego Paralegal Program.

Mr. Robertson is a graduate of the University of California, Los Angeles, School of Law (J.D. 1974), where he was a member of the *UCLA Law Review*, and Brown University (B.A., *cum laude*, 1971).